| | | |
|---|---|---|
| SHARNESE HALL | * | IN THE |
| 5419 Force Road | | |
| Baltimore, Maryland 21206 | * | |
| | | |
| On Her Own Behalf and on Behalf of | * | CIRCUIT COURT |
| All Others Similarly Situated | | |
| | * | |
| Plaintiff, | * | FOR |
| | | |
| v. | * | |
| | | |
| HWS, LLC    t/a | | |
| HENRY'S WRECKER SERVICE | * | MONTGOMERY COUNTY, MD. |
| Trolley Square | | |
| Suite 26C | * | |
| Wilmington, Delaware 19806 | | |
| Serve on: | * | |
| Elizabeth A. Green | | |
| Pessin Katz Law, P.A. | * | |
| 901 Dulaney Valley Road | | |
| Suite 500 | * | |
| Towson, Maryland 21204 | | |
| | * | Case No. _____ |
| and | | |
| | * | |
| HENRY'S WRECKER SERVICE | | |
| COMPANY OF FAIRFAX | * | |
| COUNTY, INC.       t/a | | |
| HENRY'S WRECKER SERVICE | * | |
| 2735 Hartland Road | | |
| Suite 202 | * | |
| Falls Church, Virginia 22043 | | |
| Serve on: | * | |
| Elizabeth A. Green | | |
| Pessin Katz Law, P.A. | * | |
| 901 Dulaney Valley Road | | |
| Suite 500 | * | |
| Towson, Maryland 21204 | | |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## Class Action Complaint and Demand for Jury Trial

Plaintiff, Sharnese Hall ("Ms. Hall"), on her own behalf and on behalf of a class of

similarly situated persons, by and through her attorneys Richard S. Gordon and Sara E. Assaid

of GORDON, WOLF & CARNEY, CHTD., sues Defendants HWS, LLC and Henry's Wrecker Service Company of Fairfax County, Inc. (collectively, "Henry's") and alleges as follows:

## INTRODUCTION

1. This Class Action Complaint and Demand for Jury Trial (the "Complaint") challenges the predatory and illegal towing practices of the Defendants, which have been perpetrated against hundreds, if not thousands of people, profiting Defendants to the tune of millions of dollars.

2. Defendants, both operating as a towing company under the name Henry's Wrecker Service (collectively referred to as "Henry's"), routinely tow vehicles without the permission of the vehicle's owner and then – asserting an illegal lien – demand payment to release the vehicle to its rightful owner even though the Maryland Courts are clear that towing companies may **not** assert and do **not** have – either at common law or by statute – a lien over involuntarily towed vehicles. *See T.R. Ltd. v. Lee*, 55 Md. App. 629, 634 (1983) and *Cade v. Montgomery County*, 83 Md. App. 419 (1990), *cert. denied*, 320 Md. 350 (1990), *U.S. cert. denied*, 112 L.Ed.2d 1047 (1991).

3. In connection with these non-consensual or "trespass" tows, Henry's – acting under contracts with Parking Lots, owners, managers and/or agents throughout Montgomery County and acting as their agent within the scope of their agency – knowingly and intentionally violated duties set forth in Maryland's Towing or Removal of Vehicles from Parking Lots Law (Md. Code Ann., Transp. §§ 21-10A-01, *et seq.* (the "Maryland Towing Act")), Montgomery County's Tow Ordinances (Montgomery County Code §§ 30C-1, *et seq.* (the "MC Tow Law")) and the common law of Maryland, by uniformly and consistently: (a) asserting a lien and failing to allow the owners of towed vehicles to retake possession of their property 24 hours a day, 7 days

a week; and (b) requiring owners of towed vehicles to pay towing and related charges ***before*** allowing the owners to "retake possession" of their vehicles.

4.      Henry's predatory and illegal practices have not only victimized the individuals whose vehicles have been improperly towed, but threaten commerce. Businesses in places where Henry's is active, like Montgomery County, lose countless customers who are unwilling to travel by car to do business where their cars could disappear at any moment – and where they would be forced to pay hundreds of dollars to ransom their vehicles.

5.      Complaints with government agencies about Henry's improper practices have not slowed down their illegal and predatory activities. Plaintiff brings this Complaint to collect the towing and other charges imposed by Henry's as compensation for the Defendants' unlawful practices during the class period in this case.

## PARTIES

6.      HWS, LLC is a Delaware corporation, with its principal place of business in Wilmington, Delaware. HWS, LLC is engaged in the daily business of towing vehicles without the permission of the vehicle owners from private parking lots in Montgomery County, Maryland.

7.      Henry's Wrecker Service Company of Fairfax County, Inc. is a Virginia corporation, with its principal place of business in Falls Church, Virginia. Henry's Wrecker Service Company of Fairfax County, Inc. is engaged in the daily business of towing vehicles without the permission of the vehicle owners from private parking lots in Montgomery County, Maryland.

8.      Plaintiff Sharnese Hall is a citizen of Maryland, residing in Baltimore City, Maryland. In March 2021, Ms. Hall was visiting her mother in Montgomery County when her vehicle was towed by Henry's without her permission.

3

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. § 1-501. This Court has personal jurisdiction over Defendants pursuant to Md. Cts. & Jud. Proc. Code Ann. § 6-103(b), as Defendants transact business and perform work and services in the state of Maryland, contract to supply services in the state of Maryland, regularly do and solicit business and engage in other persistent courses of conduct in the state of Maryland, caused tortious injury in the state by acts and omissions in the state, and derive substantial revenue from services in the state.

10.     This Court has personal jurisdiction over Defendants under the long-arm statute of the state of Maryland, Md. Code, Cts. & Jud. Proc. § 6-103, and the United States Constitution, because Defendants conduct substantial business within the state of Maryland. Therefore, a substantial part of the events and/or omissions giving rise to the claims and Plaintiffs tortious injuries occurred within the state of Maryland.

11.     Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. § 6-201, as Defendants carry on a regular business and habitually engage in vocation in Montgomery County, Maryland.

## FACTS

### Henry's – Background

12.     Upon information and belief, Henry's is the largest towing company currently operating in Montgomery County, Maryland. It has been in business for more than 40 years and operates out of six offices in Maryland and Northern Virginia. A significant percentage of Henry's business in Maryland takes place in Montgomery County.

13.     Henry's routinely tows vehicles from "Parking Lots," as that term is defined in the Maryland Towing Act, Md. Code Ann., Transp. § 21-10A-01(a).

14.     Henry's receives a substantial portion of its business through contracts or agreements that it enters into with businesses and apartment complexes that have private Parking Lots consisting of at least three (3) spaces for vehicle parking. These Parking Lots are: (a) accessible to the general public; and (b) intended by the owner of the business to be used primarily by the business' customers, clientele, residents, lessees, and guests.

## Maryland's Private Towing Act

15.     Maryland law strictly regulates the practice of towing vehicles from private Parking Lots and imposes harsh penalties for the violation of those requirements. *See* Maryland's Towing or Removal of Vehicles from Parking Lots Law, Md. Code Ann., Transp. §§ 21-10A-01, *et seq.* (the "Maryland Towing Act").

16.     For example, the Maryland Towing Act requires specific authorization from the Parking Lot owner to tow any vehicle. In particular, the Maryland Towing Act requires that any person who tows a vehicle from a Parking Lot, "[b]efore towing or removing the vehicle, shall have authorization of the parking lot owner which shall include: (i) The name of the person authorizing the tow or removal; (ii) A statement that the vehicle is being towed or removed at the request of the parking lot owner; and (iii) Photographic evidence of the violation or event that precipitated the towing of the vehicle." Maryland Towing Act, § 21-10A-04(a)(5).

17.     Additionally, the Maryland Towing Act requires that the person in possession of a towed vehicle "shall provide the owner of the vehicle or the owner's agent immediate and continuous opportunity, 24 hours per day, 7 days per week, from the time the vehicle was received at the storage facility, to retake possession of the vehicle." Maryland Towing Act, § 21-10A-05(a)(3).

18.     The Maryland Tow Act does not create, include or provide for a towing and/or possessory lien in favor of trespass towing companies such as Henry's. All efforts over the years to amend the Maryland Tow Act to include such a towing and/or possessory lien have failed.

19.     The Maryland Towing Act, § 21-10A-06 also provides that "Any person who undertakes the towing or removal of a vehicle from a parking lot in violation of any provision of [the Maryland Towing Act]" shall be liable to the "vehicle owner" for: (a) actual damages; plus (b) triple all towing fees.

## Montgomery County's Private Tow Law

20.     The Maryland Towing Act also provides that a local authority may adopt more stringent laws or regulations governing the activities of towers such as Henry's.

21.     Montgomery County, Maryland, where Henry's operates, has adopted such laws or regulations.  Montgomery County Code §§ 30C-1, *et seq.* (the "MC Tow Law").

22.     For example, the MC Tow Law, like the Maryland Towing Act, requires specific authorization from the Parking Lot owner before a tow company such as Henry's initiates the tow of any vehicle. It provides that: "a towing company must not tow a motor vehicle from private property unless the property owner has, directly or through an agent, expressly authorized the towing of the particular vehicle."  MC Tow Law, § 30C-5(c)(1). Further, the "property owner must authorize the towing of a vehicle in writing via tow authorization form." MC Tow Law, § 30C-5(c)(2).

23.     The MC Tow Law also requires that the "property owner and the towing company must retain each tow authorization form and, for those vehicles towed without a tow authorization form, the towing company must retain a record of the information furnished to the police for one year after the tow."  MC Tow Law, § 30C-6(c).

24.     Under the MC Tow Law, § 30C-5(c)(9), "An agent of a property owner, for the purpose of ordering the towing of an unauthorized vehicle, must not:

    a.    Be employed by, or have any member of his or her immediate family employed by, any towing service; or

    b.    Have any financial interest in any towing service or the towing of any motor vehicle."

25.     In addition, "[a] towing company must not charge a vehicle owner any fee for the services of another agent of the property owner." MC Tow Law, § 30C-5(c)(5).

26.     Under the MC Tow Law, a towing company has a duty to return the vehicle to the vehicle's owner and provide the owner of the vehicle or the owner's agent immediate and continuous opportunity to retake possession of the vehicle.

27.     In fact, the MC Tow Law expressly provides that Maryland does "not create or imply a lien in favor of a towing company when such a lien would not otherwise exist. This subsection and section 30C-8 do not give a towing company a right to retain possession of any vehicle it would otherwise have to return to the vehicle owner."  MC Tow Law, § 30C-9(b)(5).

28.     And just to state this point expressly, the Editor's Note to the MC Tow Law emphasizes, *inter alia*, that: "the law's failure to create an express possessory lien denied the right of a towing company to require payment of its fee prior to releasing a towed vehicle."

29.     For any and all violations of the MC Tow Law, the towing company is liable for "three times the amount of any towing, release or storage fees charged." MC Tow Law, § 30C-10(e).

## FACTS APPLICABLE TO THE NAMED PLAINTIFF

### Ms. Hall's Vehicle Is Illegally
### Towed and Held By Henry's

30.     On March 2, 2021, Ms. Hall parked her Honda Civic (the "Vehicle") in the Arrive Wheaton apartments Parking Lot located at 11215 Georgia Ave., Wheaton, Maryland

20902. At all times relevant to this Complaint, Ms. Hall was using the Vehicle for personal, family or household purposes.

31.     At the time Ms. Hall's vehicle was towed, the apartments were known as the Exchange Apartments at Wheaton Station ("Exchange Apartments").

32.     Henry's had a contract or agreement with the apartment building and/or its management company that provided that Henry's would tow and store unauthorized vehicles from the Exchange Apartments Parking Lot.

33.     Ms. Hall's mother is a resident of the apartment building. Ms. Hall obtained a guest pass from the Exchange Apartments in order to park her car overnight so that she could take her mother to a doctor's appointment in the morning.

34.     On the morning of March 3, 2021, prior to taking her mother to her doctor's appointment, Ms. Hall attempted to move her vehicle, but her vehicle was not in the space where she parked it the previous night.

35.     After noticing that her vehicle was missing, Ms. Hall informed the Exchange Apartments that her vehicle was missing. In turn, an employee or agent of the Exchange Apartments management – Foulger-Pratt – instructed Ms. Hall to call Henry's.

36.     Ms. Hall's first few attempted phone calls to Henry's went unanswered.

37.     When, Ms. Hall finally spoke to an employee of Henry's, described her vehicle, and asked if Henry's had towed it. The person on the other end of the line, who identified themselves as an agent or employee of Henry's, indicated that Henry's had possession of her vehicle.

38.     Once Henry's informed Ms. Hall of the location of her vehicle, Ms. Hall went to Henry's location in order to retrieve and retake possession of the vehicle.

39.     Ms. Hall demanded the return of her vehicle.

40.     Regardless, the employee or agent of Henry's falsely told Ms. Hall that, as a precondition for retaking possession of her vehicle, she would have to pay Henry's the entire towing fees and charges allegedly owed in connection with the tow – namely, $150.

41.     The employee or agent of Henry's made the false and material misstatement of fact to Ms. Hall even though Henry's knew or had reason to know that Maryland does not have a towing or possessory lien. Henry's made such representations to Ms. Hall knowing that they were unfair, abusive, and deceptive, and that Ms. Hall would rely to her detriment upon false statements, which she did.

42.     Ms. Hall paid Henry's $150 via credit card. Only after Ms. Hall paid the $150 towing fees and charges, did Henry's permit Ms. Hall to retake possession of her vehicle.

43.     Ms. Hall had no reasonable choice but to pay these fees in order to retake possession of her vehicle.

44.     Henry's failed to advise Ms. Hall of the material fact that it was not entitled to payment of any of these fees, because of its violations of the Maryland Towing Act and MC Tow Law.

45.     As a result of Henry's unlawful actions, and in addition to her financial damages, Ms. Hall also endured severe emotional distress, had difficulty sleeping and suffered elevated stress levels and anxiety.

### Henry's Violated the Maryland Towing Act and MC Tow Law
### When Towing Plaintiff's Cars Causing Damages

46.     Henry's knowingly and intentionally engaged in violations of the Maryland Towing Act and the MC Tow Law in the towing and holding of Named Plaintiff's vehicle by failing to provide Named Plaintiff the immediate and continuous opportunity to retake possession

of her vehicle as required by the Maryland Towing Act, § 21-10A-05(a)(3) and the MC Tow Law, § 30C-9(b)(5).

47.    Named Plaintiff suffered actual damages and emotional injury as the result of Henry's violations, including the $150 in charges that Henry's collected.

**Henry's Violations of the
Maryland Towing Act and MC Tow Law
<u>Are Not Limited to the Named Plaintiff</u>**

48.    Henry's uniformly and routinely violated the Maryland Towing Act and MC Tow Law and the common law as a part of its general business practice and perpetrated these violations in its interactions with members of the Plaintiff Class, defined below.

49.    Despite the foregoing, Henry's knowingly and intentionally engages in unlawful conduct that interfers with the continued immediate access by consumers to their vehicles, egregiously taking and holding hostage the vehicles of thousands of consumers unless they pay Henry's ransom of whatever amount Henry's demands.

50.    During the Class period in this case, Henry's made hundreds, if not thousands, of involuntary tows of vehicles each month resulting in actual damages and emotional distress in each instance

51.    Henry's routinely tows vehicles from Parking Lots across Montgomery County, Maryland.

52.    Nevertheless, in towing vehicles from these Parking Lots, Henry's does not obey the requirements of either the Maryland Towing Act or the MC Tow Law.

53.    For example, Henry's systematically fails to provide Class members with the immediate and continuous opportunity to retake possession of their vehicles, in violation of § 21-10A-05(a)(3) of the Maryland Towing Act.

10

54.     This Complaint seeks to remedy Henry's systematic violations of the Maryland Towing Act and the MC Tow Law, to stop these violations, and to obtain compensation for Henry's victims.

55.     Unless and until this Court grants the relief Plaintiff seeks through this action, Henry's will continue to benefit from the business practices which violated the Maryland Towing Act, MC Tow Law and the common law, which will result in harm to thousands of drivers throughout Maryland.

## CLASS ACTION ALLEGATIONS

56.     Named Plaintiff brings this action on behalf of a Plaintiff Class which consists of:

All persons whose vehicles, between March 23, 2019 and the present were non-consensually towed by Henry's Wrecker Service from a private Parking Lot in Montgomery County, Maryland.

57.     The Class, as defined above, is identifiable.  The Named Plaintiff, Ms. Hall, is a member of the Plaintiff Class.

58.     The Class is so numerous that joinder of all members is impracticable.

59.     There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual Class members. The common and predominating questions include, but are not limited to:

(a)     Whether Defendants failed to provide Named Plaintiff and Class members the immediate and continuous opportunity for persons to retake possession of their vehicles, and, when it did so, acted with knowledge and intent that it lacked a legal right to do so;

(b)     Whether the actions of Defendants constitute violations of the Maryland Towing Act in its transactions with Named Plaintiff and Class members;

11

  (c)  Whether the actions of Defendants constitute violations of the MC Tow Law in its transactions with Named Plaintiff and Class members;

  (d)  Whether Defendants actions constitute violations of the Maryland Consumer Debt Collection Act;

  (e)  Whether Defendants claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist in its dealings with Named Plaintiff and Class members; and

  (f)  Whether Named Plaintiff and the Class may recover damages for emotional distress and/or mental anguish from Defendants.

60.  The claims of the Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of Henry's.

61.  Named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class within the meaning of Md. Rule 2-231(b)(4). Named Plaintiff is committed to vigorously litigating this matter. Further, Named Plaintiff has secured counsel experienced in handling class actions and complex litigation.

62.  Neither Named Plaintiff nor Plaintiff's counsel has any interests that might cause them not to vigorously pursue this claim.

63.  The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct Henry's within the meaning of Md. Rule 2-231(c)(1)(A).

64.  Henry's actions are generally applicable to the respective Class as a whole, and Named Plaintiff seeks equitable remedies with respect to the Class as a whole within the meaning of Md. Rule 2-231(c)(2).

65.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

66.    The likelihood that individual members of the Class will prosecute or defend separate actions is remote due to the time and expense necessary to conduct such litigation.

67.    Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## CAUSES OF ACTION

### Count I
### Violation of the Maryland Towing Act
(Md. Code Ann., Transp. § 21-10A-05(a)(3))

68.    Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

69.    Under Md. Code Ann., Transp. § 21-10A-05(a)(3), Henry's had a duty to "provide the owner of the vehicle or the owner's agent immediate and continuous opportunity, 24 hours per day, 7 days per week, from the time the vehicle was received at the storage facility, to retake possession of the vehicle."

70.    Henry's uniformly and consistently violated this duty in contravention of the Maryland Towing Act, Md. Code Ann., Transp. § 21-10A-05(a)(3) by asserting a possessory lien on trespass towed vehicles.

71.    As a result of Henry's failure to comply with Md. Code Ann., Transp. § 21-10A-05(a)(3) of the Maryland Towing Act, Named Plaintiff and the Plaintiff Class suffered actual loss and other damages.

## Count II
### Violation of the MC Tow Law
(Montgomery County Code, § 30C-9)

72.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

73.     Under the MC Tow Law, Henry's has a duty to return the vehicle to the vehicle's owner and provide the owner of the vehicle or the owner's agent immediate and continuous opportunity to retake possession of the vehicle. In fact, the MC Tow Law expressly provides that it does "not create or imply a lien in favor of a towing company when such a lien would not otherwise exist. This subsection and Section 30C-8 do not give a towing company a right to retain possession of any vehicle it would otherwise have to return to the vehicle owner." MC Tow Law, 30C-9(b)(5).

74.     Regardless, Henry's uniformly and consistently failed to comply with the requirements of the MC Tow Law by requiring Named Plaintiff and Plaintiff Class members to pay all towing, storage, and other charges as a condition to retaking possession of their vehicles.

75.     By claiming a lien on the Named Plaintiff's and Plaintiff Class members' vehicles, when no such lien existed, Henry's acted in contravention of the Montgomery County Code.

76.     As a result of Henry's failure to comply with MC Tow Law, Named Plaintiff and the Plaintiff Class suffered actual loss and other damages.

## Count III
### Violation of the Maryland Consumer Protection Act
(Md. Code Ann., Com. Law §§ 13-101, *et seq.*)

77.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

78.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the collection of consumer debts. CPA, § 13-303(3) and (4).

79.     The collection of towing charges from Named Plaintiff and members of the Plaintiff Class constitutes collection of consumer debts.

80.     As "person[s]" under the CPA, § 13-101(h), Henry's is prohibited from engaging in unfair and deceptive trade practices.

81.     The CPA specifically prohibits Henry's from making any false or misleading oral or written statement or other representation of any kind that has the capacity, tendency or effect of deceiving or misleading consumers. CPA, § 13-301(1).

82.     The CPA further prohibits Henry's from failing to state a material fact if the failure deceives or tends to deceive. CPA, § 13-301(3).

83.     In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), the Defendants represented to Named Plaintiff and members of the Plaintiff Class that: (1) they were required to pay towing charges for "trespass tows," despite Henry's violations of Maryland and Montgomery County law described above; and (2) they were required to pay these charges before they could regain possession of their vehicles. By making these representations, Henry's engaged in misrepresentations and failures to state material facts, which deceived and tended to deceive and violated the aforesaid sections of the CPA.

84.     These representations were false and misleading and tend to and did deceive Named Plaintiff and members of the Plaintiff Class, who made payments to Henry's that were not due and owing. In violation of the CPA, § 13-303(3) - (4) and §13-301(3), Henry's failed to disclose to Named Plaintiff and members of the Plaintiff Class certain material facts, including

15

the fact that the charges imposed by Henry's were unlawful, and that Henry's had no right to retain their vehicles until payment was made to Henry's.

85.     These misrepresentations and failures to disclose material facts led Named Plaintiff and members of the Plaintiff Class to make payments that were not due and that they would not have made had Henry's informed them of the material facts. Henry's committed unfair and deceptive practices by collecting and attempting to collect on alleged consumer debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101, *et seq.*, including § 13-303(3) and (4), and § 13-301(1) and (3).

86.     As a result of Henry's unfair and deceptive trade practices in violation of the CPA, Named Plaintiff and members of the Plaintiff Class were told they owed money to Henry's they did not owe, and were induced and commanded by Henry's to make payments to Henry's on amounts that were not owed, causing Named Plaintiff and members of the Plaintiff Class injury and loss.

### **Count IV**
### **Violation of the Maryland Consumer Debt Collection Act**
(Md. Code Ann., Com. Law §§ 14-201, *et. seq.*)

87.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

88.     Defendants are all "persons" as defined in Maryland's Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201(d).

89.     Defendants are all "collectors" as defined in Md. Code Ann., Com. Law § 14-201(b).

90.     The collection of towing charges from Named Plaintiff and members of the Plaintiff Class arise from "consumer transactions" as defined in Md. Code Ann., Com. Law § 14-201(c).

16

91.    By collection of towing charges from Named Plaintiff and members of the Plaintiff Class in violation of Maryland law and Montgomery County ordinance, Defendants are claiming and enforcing a right with knowledge that the right does not exist as prohibited by Md. Code Ann., Com. Law § 14-202(8).

92.    Defendants knew or should have known that its actions violated the Maryland Towing Act and MC Tow Law because: (1) Defendants were aware that Named Plaintiff and Class members were consumers and that they were collecting monies related to a consumer transaction; and (2) the Maryland Court of Special Appeals' decisions in *T.R. Ltd. v. Lee*, 55 Md. App. 629, 634 (1983) and *Cade v. Montgomery County*, 83 Md. App. 419 (1990) hold that a towing company lacks the legal right to exert a possessory lien on trespass towed vehicles.

93.    In addition, Defendants, at all times relevant to this complaint, also knew or should have known that the Editor's Note to the MC Tow Law makes clear, *inter alia*, that: "In *Cade v. Montgomery County*, 83 Md. App. 419, 575 A.2d 744 (1990), *cert. denied*, 320 Md. 350, 578 A.2d 190 (1990), *U.S. cert. denied*, 112 L.Ed.2d 1047 (1991), the court [held] … that the law's failure to create an express possessory lien denied the right of a towing company to require payment of its fee prior to releasing a towed vehicle…"

94.    Despite the knowledge that Henry's cannot exert a possessory lien over trespass towed vehicles, Defendants attempted to enforce a right that does not exist by collecting monies from the Named Plaintiff and Class members as a precondition to them regaining possession of their vehicles.

95.    Any monies paid by the Named Plaintiff and Class members that resulted from Henry's enforcement of a lien in violation of the Maryland Towing Act and MC Tow Law constitute actual damages and must be repaid to the Named Plaintiff and Class members by Henry's pursuant to the MCDCA.

17

96.    Henry's collection scheme in violation of the MCDCA has caused Named Plaintiff and Class members emotional distress and mental anguish.

97.    As a result of Henry's failure to comply with the MCDCA, Named Plaintiff and the Class suffered financial loss, emotional distress, mental anguish, and other damages.

## Count V
## Money Had and Received

98.    Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

99.    Henry's charged and collected amounts from Named Plaintiff and Plaintiff Class members in violation of the Maryland statute and Montgomery County ordinance, as set forth above.

100.    Henry's collected all charges from Named Plaintiff and Plaintiff Class members in Montgomery County, Maryland.

101.    Any agreement under which Henry's collected amounts in violation of Maryland or Montgomery County law from Named Plaintiff and Plaintiff Class members is nugatory and ineffective.

102.    Henry's received amounts collected in violation of Maryland and Montgomery County law from Named Plaintiff and each and every member of the Plaintiff Class, in Montgomery County.

103.    By doing so, Henry's obtained possession of money which, in equity and good conscience, it ought not to be allowed to retain and should return to Named Plaintiff and other Plaintiff Class members.

104.    Henry's agent or agents or employees involved in the acts alleged herein were acting at all times relevant to the allegations contained in this Complaint as the agent or

employee of Henry's and within the scope of the agency or employment.

105.    When perpetrating the acts alleged herein causing injury or damages to Named

Plaintiff and other members of the Plaintiff Class, Henry's agent or agents or employees

committed those acts within the scope of the employment or agency, and when performing

services for which they had been engaged, and when acting in furtherance of the Defendants'

interests.

106.    With respect to the acts alleged herein, Henry's, either directly or through their

agent or agents or employees, perpetrated the acts causing injuries or damages to Named

Plaintiff and the other members of the Plaintiff Class.

107.    Named Plaintiff and the Plaintiff Class paid more than they would have paid as a

result of Henry's violation of Maryland Tow Act and MC Tow Law.

108.    As a consequence, Named Plaintiff and the Plaintiff Class have sustained the losses

and damages described herein, and Henry's should be required to make restitution to them.

### Count VI
### Conversion - Civil Theft

109.    Plaintiff incorporates by reference the allegations set forth above as if fully set

forth herein.

110.    Henry's refusal to release towed vehicles unless and until the owner of the vehicle,

or owner's agent, first paid Henry's all monies allegedly owed for the tow, constitutes an

intentional exercise of dominion over the chattel which seriously interfered with the ownership

rights of the true owners.

111.    Henry's exercised such dominion without permission or justification.

112.    Although the Defendants knew or should have known that their actions constituted a wrongful conversion, the Defendants nonetheless asserted a right to "lien" on Named Plaintiff's and Plaintiff Class members' vehicles with actual malice.

113.    As a result of the conversion, Named Plaintiff and Plaintiff Class members suffered actual injury and loss.

**WHEREFORE**, Named Plaintiff demands, on behalf of herself and the Class:

A.    An Order certifying this case as a Plaintiff Class action pursuant to Md. Rule 2-231(c)(1), (2) and/or (3);

B.    Triple the amount paid by Plaintiff and each Class member to Henry's to retake possession of their vehicles, which in an aggregated amount exceeds $75,000.00;

C.    Damages for emotional distress and mental anguish under the MCDCA, Md. Code Ann., Com. Law §§ 14-201, *et. seq.*

D.    Actual damages;

E.    Punitive damages;

F.    An award of reasonable attorney's fees and litigation costs to be determined; and,

G.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:    March 23, 2022

Richard S. Gordon (CPF No. 8912180227)
rgordon@GWCfirm.com
Sara E. Assaid (CPF No. 2001220006)
sassaid@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.

100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)

*Attorneys for Plaintiff and*
*the Putative Plaintiff Class*


By: _____
Richard S. Gordon

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


_____
Richard S. Gordon



GORDON, WOLF & CARNEY
CHTD

Sara E. Assaid
sassaid@GWCfirm.com

March 23, 2022

Civil Clerk, Circuit Court for Montgomery County
50 Maryland Avenue
Rockville, Maryland 20850

  **Re:**   *Hall v. HWS, LLC, et al.*

Dear Clerk:

  Attached to this envelope are (1) Plaintiff's Class Action Complaint and Demand for Jury Trial and (2) a Civil Non-Domestic Cover Sheet.

  **Please send me the summonses for private process service when they are ready.**

  Thank you for your assistance, and please let me know if you have any questions. You can reach me at 410-825-2300.

      Very truly yours,

      /s/ Sara E. Assaid

SEA