**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

(Southern Division)

| | | |
|---|---|---|
| SHARNESE HALL | : | |
| | : | |
| On Her Own Behalf and on Behalf of | : | |
| All Others Similarly Situated, | : | Civil Action No. 8:22-cv-00996-PJM |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HWS, LLC    t/a | : | |
| HENRY'S WRECKER SERVICE | : | |
| | : | |
| and | : | |
| | : | |
| HENRY'S WRECKER SERVICE | : | |
| COMPANY OF FAIRFAX | : | |
| COUNTY, INC.       t/a | : | |
| HENRY'S WRECKER SERVICE | : | |
| | : | |
| and | : | |
| | : | |
| WHEATON METRO RESIDENTIAL | : | |
| HOLDINGS, LLC | : | |
| 1209 Orange Street | : | |
| Wilmington, Delaware 19801 | : | |
|       SERVE ON: The Corporation Trust, Inc. | : | |
|       2405 York Road | : | |
|       Suite 201 | : | |
|       Lutherville-Timonium, Maryland 21093 | : | |
| | : | |
| On Their Own Behalf and on Behalf | : | |
| of All Others Similarly Situated | : | |
| | : | |
| and | : | |
| | : | |

FOULGER-PRATT RESIDENTIAL, LLC           :
12435 Park Potomac Avenue                :
Suite 200                                :
Potomac, Maryland 20854                  :
    SERVE ON: Cogency Global, Inc.    :
    1519 York Road                :
    Lutherville, Maryland 21093   :
                                     :
On Their Own Behalf and on Behalf        :
of All Others Similarly Situated,        :
                                     :
    Defendants.                   :
_____

### Amended Class Action Complaint and Demand for Jury Trial

Plaintiff, Sharnese Hall ("Ms. Hall"), on her own behalf and on behalf of a class of similarly situated persons, by and through her attorneys Richard S. Gordon and Sara E. Assaid of GORDON, WOLF & CARNEY, CHTD., sues: (1) Defendants HWS, LLC and Henry's Wrecker Service Company of Fairfax County, Inc. (collectively, "Henry's" or the "Henry's Defendants") and (2) Defendants Wheaton Metro Residential Holdings, LLC ("Wheaton") and Foulger-Pratt Residential, LLC ("Foulger-Pratt") (collectively, the "Parking Lot Owner Defendants"), on their own behalf and on behalf of a Defendant Class of similarly situated persons and alleges as follows:

### <u>INTRODUCTION</u>

1.    This Amended Class Action Complaint and Demand for Jury Trial (the "Complaint") challenges the predatory and illegal towing practices of Henry's, which have been perpetrated against hundreds, if not thousands of people and profiting Defendants to the tune of millions of dollars.

2.    Wheaton, Foulger-Pratt and other private property owners, managers and agents contract with Henry's for towing services at Parking Lots in and around Montgomery County. In

the contracts with Henry's, Wheaton, Foulger-Pratt and other private property owners, managers and agents granted to Henry's a general authorization to tow vehicles on their behalf.

3.     The Henry's Defendants, both operating as a towing company under the name Henry's Wrecker Service, routinely tow vehicles without the permission of the vehicle's owner and then – asserting an illegal lien – demand payment to release the vehicle to its rightful owner even though the Maryland Courts are clear that towing companies may ***not*** assert and do ***not*** have – either at common law or by statute – a lien over involuntarily towed vehicles. *See T.R. Ltd. v. Lee*, 55 Md. App. 629, 634 (1983) and *Cade v. Montgomery County*, 83 Md. App. 419, 575 A.2d 744 (1990), *cert. denied*, 320 Md. 350, 578 A.2d 190 (1990), *U.S. cert. denied*, 112 L.Ed.2d 1047 (1991).

4.     In connection with these non-consensual or "trespass" tows, Henry's – acting under contracts for towing services with the Parking Lot Owner Defendants and other Parking Lot owners, managers and/or agents throughout Montgomery County and acting as their agent within the scope of their agency – knowingly and intentionally violated duties set forth in Maryland's Towing or Removal of Vehicles from Parking Lots Law (Md. Code Ann., Transp. §§ 21-10A-01, *et seq.* (the "Maryland Towing Act")) and Montgomery County's Tow Ordinances (Montgomery County Code §§ 30C-1, *et seq.* (the "MC Tow Law")) by uniformly and consistently: (a) asserting a lien and failing to allow the owners of towed vehicles to retake possession of their property 24 hours a day, 7 days a week; and (b) requiring owners of towed vehicles to pay towing and related charges ***before*** allowing the owners to "retake possession" of their vehicles.

5.     Defendants' predatory and illegal practices have not only victimized the individuals whose vehicles have been improperly towed, but threaten commerce.  Businesses in places where Henry's is active, like Montgomery County, lose countless customers who are

3

unwilling to travel by car to do business where their cars could disappear at any moment – and where they would be forced to pay hundreds of dollars to ransom their vehicles.

6.     Complaints with government agencies about Henry's improper practices have not slowed down their illegal and predatory activities. Plaintiff brings this Complaint to collect the towing charges imposed by Henry's as compensation for the Defendants' unlawful practices during the class period in this case.

7.     The Plaintiff Class in this case consists of all persons whose vehicles, between March 23, 2019, and the present were non-consensually towed by Henry's from a private Parking Lot in Montgomery County.

8.     In addition to suing the Henry's Defendants, Plaintiff also brings this Complaint against Wheaton, Foulger-Pratt and a Defendant Class of similarly situated Parking Lot owners, managers and agents, all of whom are jointly and severally liable with the Henry's Defendants for their violations of the law.

**PARTIES**

9.     Defendant HWS, LLC is a Delaware corporation, with its principal place of business in Wilmington, Delaware. HWS, LLC is engaged in the daily business of towing vehicles without the permission of the vehicle owners from private Parking Lots in Montgomery County, Maryland.

10.     Defendant Henry's Wrecker Service Company of Fairfax County, Inc. is a Virginia corporation, with its principal place of business in Falls Church, Virginia. Henry's Wrecker Service Company of Fairfax County, Inc. is engaged in the daily business of towing vehicles without the permission of the vehicle owners from private Parking Lots in Montgomery County, Maryland.

11.     Defendant Wheaton Metro Residential Holdings, LLC was the owner, manager and/or agent of a Parking Lot located at 11215 Georgia Ave., Wheaton, Maryland 20902 in Montgomery County from October 25, 2011 to October 13, 2021. During that time period, Wheaton was also the title owner of the Parking Lot. In 2014, Wheaton entered into a written contract with the Henry's Defendants that authorized Henry's to patrol tow and trespass tow vehicles from the Parking Lot owned or managed by Wheaton.

12.     Foulger-Pratt Residential, LLC was the owner, manager and/or agent of a Parking Lot located at 11215 Georgia Ave., Wheaton, Maryland 20902 in Montgomery County from at least 2014 until October 2021.  In 2014, Foulger-Pratt entered into a written contract with the Henry's Defendants that authorized Henry's to patrol tow and trespass tow vehicles from the Parking Lot owned or managed by Foulger-Pratt.

13.     Plaintiff Sharnese Hall is a citizen of Maryland, residing in Baltimore City, Maryland. In March 2021, Ms. Hall was visiting her mother in Montgomery County when her vehicle was towed by Henry's without her permission.

## JURISDICTION AND VENUE

14.     This class action was removed to this Court by the Henry's Defendants pursuant to 28 U.S.C. § 1446. The Henry's Defendants contend that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to the claims herein occurred within this District and the Defendants systematically and continually transacts business in this District.

## FACTS

### Henry's – Background

16.     Upon information and belief, Henry's is the largest towing company currently operating in Montgomery County, Maryland.  It has been in business for more than 40 years and operates out of six offices in Maryland and Northern Virginia. A significant percentage of Henry's business in Maryland takes place in Montgomery County.

17.     Henry's routinely tows vehicles from "Parking Lots," as that term is defined in the Maryland Towing Act, Md. Code Ann., Transp. § 21-10A-01(a).

18.     Henry's receives a substantial portion of its business through contracts or agreements that it enters into with businesses and apartment complexes that have private Parking Lots consisting of at least 3 spaces for vehicle parking.  These Parking Lots are: (a) accessible to the general public; and (b) intended by the owner of the business to be used primarily by the business' customers, clientele, residents, lessees and guests.

### Maryland's Private Towing Act

19.     Maryland law strictly regulates the practice of towing vehicles from private Parking Lots and imposes harsh penalties for the violation of those requirements. *See* Maryland's Towing or Removal of Vehicles from Parking Lots Law, Md. Code Ann., Transp. §§ 21-10A-01, *et seq*. (the "Maryland Towing Act").

20.     For example, the Maryland Towing Act requires specific authorization from the Parking Lot owner to tow any vehicle. In particular, the Maryland Towing Act requires that any person who tows a vehicle from a Parking Lot, "[b]efore towing or removing the vehicle, shall have authorization of the parking lot owner which shall include: (i) The name of the person authorizing the tow or removal; (ii) A statement that the vehicle is being towed or removed at the

request of the parking lot owner; and (iii) Photographic evidence of the violation or event that precipitated the towing of the vehicle." Maryland Towing Act, § 21-10A-04(a)(5).

21.     Additionally, the Maryland Towing Act requires that the person in possession of a towed vehicle "shall provide the owner of the vehicle or the owner's agent immediate and continuous opportunity, 24 hours per day, 7 days per week, from the time the vehicle was received at the storage facility, to retake possession of the vehicle." Maryland Towing Act, § 21-10A-05(a)(3).

22.     The Maryland Tow Act does not create, include or provide for a towing and/or possessory lien in favor of trespass towing companies such as Henry's.  All efforts over the years to amend the Maryland Tow Act to include such a towing and/or possessory lien have failed.

23.     The Maryland Towing Act, § 21-10A-06 also provides that "Any person who undertakes the towing or removal of a vehicle from a parking lot in violation of any provision of [the Maryland Towing Act]" shall be liable to the "vehicle owner" for: (a) actual damages; plus (b) triple all towing fees.

### Montgomery County's Private Tow Law

24.     The Maryland Towing Act also provides that a local authority may adopt more stringent laws or regulations governing the activities of towers such as Henry's.

25.     Montgomery County, Maryland, where Henry's operates, has adopted such laws or regulations.  Montgomery County Code §§ 30C-1, *et seq.* (the "MC Tow Law").

26.     For example, the MC Tow Law, like the Maryland Towing Act, requires specific authorization from the Parking Lot owner before a tow company such as Henry's initiates the tow of any vehicle.  It provides that: "a towing company must not tow a motor vehicle from private property unless the property owner has, directly or through an agent, expressly authorized the towing of the particular vehicle."  MC Tow Law, § 30C-5(c)(1).  Further, the

"property owner must authorize the towing of a vehicle in writing via tow authorization form."
MC Tow Law, § 30C-5(c)(2).

27.    The MC Tow Law also requires that the "property owner and the towing company must retain each tow authorization form and, for those vehicles towed without a tow authorization form, the towing company must retain a record of the information furnished to the police for one year after the tow."  MC Tow Law, § 30C-6(c).

28.    Under the MC Tow Law, § 30C-5(c)(9), "An agent of a property owner, for the purpose of ordering the towing of an unauthorized vehicle, must not:

   a.    Be employed by, or have any member of his or her immediate family employed by, any towing service; or
   b.    Have any financial interest in any towing service or the towing of any motor vehicle."

29.    In addition, "[a] towing company must not charge a vehicle owner any fee for the services of another agent of the property owner." MC Tow Law, § 30C-5(c)(5).

30.    Under the MC Tow Law, a towing company has a duty to return the vehicle to the vehicle's owner and provide the owner of the vehicle or the owner's agent immediate and continuous opportunity to retake possession of the vehicle.

31.    In fact, the MC Tow Law expressly provides that Maryland does "not create or imply a lien in favor of a towing company when such a lien would not otherwise exist. This subsection and Section 30C-8 do not give a towing company a right to retain possession of any vehicle it would otherwise have to return to the vehicle owner."  MC Tow Law, § 30C-9(b)(5).

32.    And just to state this point expressly, the Editor's Note to the MC Tow Law emphasizes, *inter alia*, that: "the law's failure to create an express possessory lien denied the right of a towing company to require payment of its fee prior to releasing a towed vehicle."

33.     For any and all violations of the MC Tow Law, the "property owner and []" towing company are jointly and severally liable" for "three times the amount of any towing, release or storage fees charged." MC Tow Law, § 30C-10.

## FACTS APPLICABLE TO THE NAMED PLAINTIFF

### Ms. Hall's Vehicle Is Illegally
### Towed and Held By Henry's

34.     On March 2, 2021, Ms. Hall parked her Honda Civic (the "Vehicle") in the Arrive Wheaton apartments Parking Lot located at 11215 Georgia Ave., Wheaton, Maryland 20902.  At all times relevant to this Complaint, Ms. Hall was using the Vehicle for personal, family or household purposes.

35.     At the time Ms. Hall's vehicle was towed, the apartments were known as the Exchange Apartments at Wheaton Station ("Exchange Apartments").

36.     Henry's had a contract or agreement with the Parking Lot Owner Defendants that provided that Henry's would tow and store unauthorized vehicles from the Exchange Apartments Parking Lot.

37.     Ms. Hall's mother is a resident of the apartment building.  Ms. Hall obtained a guest pass from the Exchange Apartments in order to park her car overnight so that she could take her mother to a doctor's appointment in the morning.

38.     On the morning of March 3, 2021, prior to taking her mother to her doctor's appointment, Ms. Hall attempted to move her vehicle, but her vehicle was not in the space where she parked it the previous night.

39.     After noticing that her vehicle was missing, Ms. Hall informed the Exchange Apartments that her vehicle was missing.  In turn, an employee or agent of the Exchange Apartments management – Foulger-Pratt –  instructed Ms. Hall to call Henry's.

40.     Ms. Hall first few attempted phone calls to Henry's went unanswered.

41.     At approximately 8:30 a.m., Ms. Hall finally spoke to an employee of Henry's, described her vehicle, and asked if Henry's had towed it. The person on the other end of the line, who identified themselves as an agent or employee of Henry's, indicated that Henry's had possession her vehicle.

42.     Once Henry's informed Ms. Hall of the location of her vehicle Ms. Hall went to Henry's location in order to retrieve and retake possession of the vehicle.

43.     Ms. Hall demanded the return of her vehicle.

44.     Regardless, the employee or agent of Henry's falsely told Ms. Hall that, as a precondition for retaking possession of her vehicle, she would have to pay Henry's the entire towing fees and charges allegedly owed in connection with the tow – namely, $150.

45.     The employee or agent of Henry's made the false and material misstatement of fact to Ms. Hall even though Henry's knew or had reason to know that Maryland does not have a towing or possessory lien. Henry's made such representations to Ms. Hall knowing that they were unfair, abusive and deceptive and that Ms. Hall would rely to her detriment upon false statements, which she did.

46.     Ms. Hall paid Henry's $150 via credit card. Only after Ms. Hall paid the $150 towing fees and charges, did Henry's permit Ms. Hall to retake possession of her vehicle.

47.     Ms. Hall had no reasonable choice but to pay these fees in order to retake possession of her vehicle.

48.     Henry's failed to advise Ms. Hall of the material fact that it was not entitled to payment of any of these fees, because of its violations of the Maryland Towing Act and MC Tow Law.

49.     As a result of Henry's unlawful actions, and in addition to her financial damages, Ms. Hall also endured severe emotional distress, had difficulty sleeping and suffered elevated stress levels and anxiety.

**Henry's Violated the Maryland Towing Act and MC Tow Law
<u>When Towing Plaintiff's Car Causing Damages</u>**

50.     Henry's knowingly and intentionally engaged in violations of the Maryland Towing Act and the MC Tow Law in the towing and holding of Named Plaintiff's vehicle by failing to provide Named Plaintiff the immediate and continuous opportunity to retake possession of her vehicle as required by the Maryland Towing Act, § 21-10A-05(a)(3) and the MC Tow Law, § 30C-9(b)(5).

51.     Named Plaintiff suffered actual damages and emotional injury as the result of Henry's violations, including the $150 in charges that Henry's collected.

**Henry's Violations of the
Maryland Towing Act and MC Tow Law
<u>Are Not Limited to the Named Plaintiff</u>**

52.     Henry's uniformly and routinely violated the Maryland Towing Act and MC Tow Law as a part of its general business practice and perpetrated these violations in its interactions with members of the Plaintiff Class, defined below.

53.     Despite the foregoing, Henry's knowingly and intentionally engages in unlawful conduct that interferes with the continued immediate access by consumers to their vehicles, egregiously taking and holding hostage the vehicles of thousands of consumers unless they pay Henry's ransom of whatever amount Henry's demands.

54.     During the class period in this case, Henry's made hundreds, if not thousands, of involuntary tows of vehicles each month resulting in actual damages and emotional distress in each instance

55. Henry's routinely tows vehicles from Parking Lots across Montgomery County, Maryland.

56. Nevertheless, in towing vehicles from these Parking Lots, Henry's does not obey the requirements of either the Maryland Towing Act or the MC Tow Law.

57. For example, Henry's systematically fails to provide Plaintiff Class members with the immediate and continuous opportunity to retake possession of their vehicles, in violation of § 21-10A-05(a)(3) of the Maryland Towing Act.

58. And the reason why Henry's imposes and contrives an illegal possessory lien on the vehicles of the Named Plaintiff and members of the Plaintiff Class, is because the asserted lien is a key and necessary part of Henry's efforts to collect the towing fees arising out of the towing of the Name Plaintiff and Plaintiff Class members' vehicles.

59. This Complaint seeks to remedy Henry's systematic violations of the Maryland Towing Act and the MC Tow Law, to stop these violations, and to obtain compensation for Henry's victims.

60. Unless and until this Court grants the relief Plaintiff seeks through this action, the Henry's will continue to benefit from the business practices which violated the Maryland Towing Act and MC Tow Law, which will result in harm to thousands of drivers throughout Maryland.

## FACTS APPLICABLE TO THE NAMED DEFENDANTS

### Henry's Conducted Trespass Towing
### On Behalf of Defendants Wheaton and Foulger-Pratt

61. At all relevant times, Wheaton and Foulger-Pratt contracted with the Henry's Defendants to patrol the Exchange Apartments Parking Lot owned, managed or controlled by them, and to tow any unauthorized vehicles from the Parking Lot.

62.     Wheaton and Foulger-Pratt established the rules for their Parking Lot and, as part of their contract with Henry's, granted to Henry's authorization to patrol the Parking Lot owned, managed or controlled by them, and, within Henry's discretion, tow vehicles that are allegedly in violation of their Parking Lot rules.

63.     The fact that Henry's had plenary authority to patrol the Parking Lot owned, managed or controlled by Wheaton and Foulger-Pratt and tow away vehicles almost at will was well known and communicated to the residents of the Exchange Apartments complex and the public generally.

64.     In addition, Wheaton and Foulger-Pratt also posted information regarding the delegation of all trespass towing services to Henry's throughout the Parking Lot owned, managed or controlled by Wheaton and Foulger-Pratt.  In short, Defendants made it well known to all of the residents that Henry's acted on Wheaton and Foulger-Pratt's behalf and was in charge of, and exercised control over all aspects of trespass towing of vehicles from the Parking Lot.

65.     Wheaton and Foulger-Pratt knew and had reason to know that Henry's undertook the acts alleged herein, including but not limited to, systematically failing to provide Plaintiff Class members with the immediate and continuous opportunity to retake possession of their vehicles.

66.     Wheaton and Foulger-Pratt also knew or had reason to know that Henry's trespass towing practices violated the Maryland Towing Act and the MC Tow Law in numerous ways including but not limited to Henry's illegal, though uniform and consistent policy of requiring vehicle owners to pay all towing and storage fees as a precondition for the release of the vehicle.

67.     Thus, Wheaton and Foulger-Pratt knew and understood that the natural consequences of their actions would allow Henry's to tow vehicles in violation of Maryland law.

68.     By entering into the contract with Henry's and giving these instructions, Wheaton and Foulger-Pratt substantially assisted, supported and encouraged Henry's in its efforts to violate the Maryland Towing Act and the MC Tow Law and facilitated Henry's ability to: (a) retain funds collected from members of the Plaintiff Class that it may not in good conscience retain; and (b) obtain and retain possession or otherwise convert vehicles of Plaintiff Class members, thus aiding and abetting Henry's violations of Maryland law.

69.     Named Defendants Wheaton and Foulger-Pratt also conspired with Henry's to violate the Maryland Towing Act and the MC Tow Law by reaching an agreement or understanding with Henry's that permitted Henry's to patrol tow the Parking Lot owned, managed or controlled by Wheaton and Foulger-Pratt and by agreeing that Henry's would exercise a possessory lien over all trespass towed vehicles.

70.     Named Defendants Wheaton and Foulger-Pratt committed multiple overt acts that furthered the conspiracy, including but not limited to those set forth herein.

71.     As a proximate result of the conspiracy, the Plaintiff Class members have suffered injury and damages including but not limited to the payment of the towing and storage fees demanded by Henry's as a condition for permitting the Plaintiff Class members to retake possession of their vehicles.

72.     Henry's was Wheaton and Foulger-Pratt's agent, and was acting within the scope of that agency, while performing services for which it had been engaged by Wheaton and Foulger-Pratt, at all times relevant to the actions alleged in this Complaint. Wheaton and Foulger-Pratt manifested and indicated to Henry's that Wheaton and Foulger-Pratt consented to Henry's acting for Wheaton and Foulger-Pratt benefit, and Henry's consented to act for Wheaton and Foulger-Pratt.  That consent was evidenced by, among other things, a contract under which Henry's and Wheaton and Foulger-Pratt agreed that Henry's would tow cars off of

the Parking Lot, with Wheaton and Foulger-Pratt authorization, and by Henry's placement of signs on Wheaton and Foulger-Pratt's property stating that Henry's would tow vehicles from the Parking Lot.

73.     Wheaton and Foulger-Pratt had ultimate responsibility to control the end result of Henry's actions.

74.     Henry's was subject to Wheaton and Foulger-Pratt control, and had a duty to act primarily for Wheaton and Foulger-Pratt benefit.  Among other things, the law places Henry's under the control of Parking Lot owners, defined by the MC Tow Law as "the person in whose name the property is titled, or any other person in lawful possession or control of the property." MC Tow Law, § 30C-2. It also and requires Henry's to act for the benefit of Parking Lot owners – such as Wheaton and Foulger-Pratt. Under the Maryland Towing Act, any person who tows a vehicle from a parking lot, "[b]efore towing or removing the vehicle, shall have authorization of the parking lot owner which shall include: (i) The name of the person authorizing the tow or removal; (ii) A statement that the vehicle is being towed or removed at the request of the parking lot owner; and (iii) Photographic evidence of the violation or event that precipitated the towing of the vehicle." Maryland Towing Act, § 21-10A-04(a)(5). The MC Tow Law additionally provides that: "a property owner must not tow a motor vehicle from the owner's property unless the property owner has, directly or through an agent, expressly authorized the towing of the particular vehicle."  MC Tow Law, § 30C-5(c)(1).

75.     Henry's also had the power to alter the legal relations of Wheaton and Foulger-Pratt. Among other things, Henry's had the power to subject Parking Lot owners – such as Wheaton and Foulger-Pratt – to liability.  For example, under the MC Tow Law, § 30C-10(c), "a property owner and a towing company are jointly and severally liable for the violation of any duty imposed by this Chapter on the towing company."

76. Named Defendants Wheaton and Foulger-Pratt are jointly and severally liable and responsible for the injuries and damages suffered by Plaintiffs: (a) under the express provisions of the MC Tow Law; (b) as a result of the actions of Wheaton and Foulger-Pratt agent Henry's; (c) for aiding and abetting Henry's violations of the law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

**Henry's Conducted Trespass Towing
Not Just for Wheaton and Foulger-Pratt But for Hundreds
of Other Parking Lot Owners, Managers and Agents**

77. The Henry's Defendants' trespass towing services were not limited to Wheaton and Foulger-Pratt. As defined below, the Defendant Class in this action consists of hundreds of Parking Lot owners, managers and/or agents who, like Wheaton and Foulger-Pratt, entered into written contracts with Henry's that authorized Henry's, as their agent, to patrol their Parking Lots and trespass tow vehicles.

78. Like Wheaton and Foulger-Pratt, the members of the Defendant Class contracted with Henry's to patrol their Parking Lots, and to tow any unauthorized vehicle from those lots.

79. Like Wheaton and Foulger-Pratt, the members of the Defendant Class established the rules for the Parking Lots through their contracts with Henry's. Henry's standard "Towing Contract," in this regard, granted to Henry's authorization to patrol the Parking Lots and to tow vehicles that are allegedly in violation of Parking Lot rules.

80. The fact that Henry's had plenary authority to patrol the Parking Lots owned, managed or controlled by the Defendant Class and tow away vehicles almost at will was well known and communicated to the public generally.

81. At all relevant times, the members of the Defendant Class posted information regarding the delegation of all trespass towing services to Henry's throughout the Parking Lots

and made it well known to the public that Henry's acts on their behalf and is in charge of, and exercises control over all aspects of trespass towing of vehicles from those properties.

82.     The members of the Defendant Class also knew or had reason to know that Henry's trespass towing practices violated the Maryland Towing Act and the MC Tow Law in numerous ways including but not limited to Henry's illegal, though uniform and consistent policy of requiring vehicle owners to pay all towing and storage fees as a precondition for the release of the vehicle.

83.     Thus, like Wheaton and Foulger-Pratt, the members of the Defendant Class knew and understood that the natural consequences of their actions would allow Henry's to tow vehicles in violation of Maryland law.

84.     By entering into the contracts with Henry's and giving these instructions, the members of the Defendant Class substantially assisted, supported and encouraged Henry's in its efforts to violate the Maryland Towing Act and the MC Tow Law and facilitated Henry's ability to: (a) retain funds collected from members of the Plaintiff Class that it may not in good conscience retain; and (b) obtain and retain possession or otherwise convert vehicles of Plaintiff Class, thus aiding and abetting Henry's violations of Maryland law.

85.     Like Named Defendants Wheaton and Foulger-Pratt, the members of the Defendant Class also conspired with Henry's to violate the Maryland Towing Act and the MC Tow Law by reaching an agreement or understanding with Henry's that permitted Henry's to patrol tow Parking Lots owned, managed or controlled by them and by agreeing, *inter alia*, that Henry's would exercise a possessory lien over all trespass towed vehicles.

86.     The members of the Defendant Class committed multiple overt acts that furthered the conspiracy, including but not limited to those set forth herein.

87. As a proximate result of the conspiracy, the Plaintiff Class members have suffered injury and damages including but not limited to the payment of the towing and storage fees demanded by Henry's.

88. As with Named Defendants Wheaton and Foulger-Pratt, Henry's was the agent of each Defendant Class member, and was acting within the scope of that agency, while performing services for which it had been engaged by each Defendant Class member, at all times relevant to the actions alleged in this Complaint. Each Defendant Class member manifested and indicated to Henry's that the Defendant Class member consented to Henry's acting for the Defendant Class member's benefit, and Henry's consented to act for each Defendant Class member. That consent was evidenced by, among other things, a contract under which Henry's and the Defendant Class member agreed that Henry's would tow cars off of the Defendant Class member's properties for the Defendant Class member, with the Defendant Class member's authorization, and by Henry's placement of signs on the Defendant Class member's properties stating that Henry's would tow vehicles from the Defendant Class member's Parking Lots.

89. Each Defendant Class member had ultimate responsibility to control the end result of Henry's actions.

90. Henry's was subject to each Defendant Class member's control, and had a duty to act primarily for the Defendant Class member's benefit. Among other things, the law places Henry's under the control of Parking Lot owners, defined by the MC Tow Law as "the person in whose name the property is titled, or any other person in lawful possession or control of the property." MC Tow Law, § 30C-2. It also and requires Henry's to act for the benefit of Parking Lot owners – such as each Defendant Class member. Under the Maryland Towing Act, any person who tows a vehicle from a parking lot, "[b]efore towing or removing the vehicle, shall have authorization of the parking lot owner which shall include: (i) The name of the person

authorizing the tow or removal; (ii) A statement that the vehicle is being towed or removed at the request of the parking lot owner; and (iii) Photographic evidence of the violation or event that precipitated the towing of the vehicle." Maryland Towing Act, § 21-10A-04(a)(5). The MC Tow Law additionally provides that: "a property owner must not tow a motor vehicle from the owner's property unless the property owner has, directly or through an agent, expressly authorized the towing of the particular vehicle."  MC Tow Law, § 30C-5(c)(1).

91.     Henry's also had the power to alter the legal relations of each Defendant Class member. Among other things, Henry's had the power to subject Parking Lot owners – such as each Defendant Class member – to liability.  For example, under the MC Tow Law, § 30C-10(c), "a property owner and a towing company are jointly and severally liable for the violation of any duty imposed by this Chapter on the towing company."

92.     Like Named Defendants Wheaton and Foulger-Pratt, the members of the Defendant Class are jointly and severally liable and responsible for the damages suffered by Plaintiffs: (a) under the express provisions of the MC Tow Law; (b) as a result of the actions of their agent Henry's; (c) for aiding and abetting Henry's violations of the law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

**CLASS ACTION ALLEGATIONS**

93.     Named Plaintiff brings this action on behalf of a Plaintiff Class which consists of:

All persons whose vehicles, between March 23, 2019 and the present were non-consensually towed by Henry's Wrecker Service from a private Parking Lot in Montgomery County, Maryland.

94.     Named Plaintiff also brings this action against a Defendant Class which consists

of:

> All private Parking Lot owners, managers and agents who entered into a written
> contract with one or both of the Henry's Defendants for the provision of trespass
> towing services which resulted in one and or more vehicles being towed from the
> Parking Lot between March 23, 2019 and the present.

95.     A Maryland Court has previously certified a defendant class in a class action,

virtually identical to this case, alleging violations of the Maryland Towing Act and MC Tow law.

In *Yang, et al. v. G & C Gulf, Inc. f/d/b/a G&G Towing, et al.*, Case No. 403885V (Cir. Ct. Mont.

Co., MD), the Honorable Ronald B. Rubin of the Circuit Court for Montgomery County,

certified a defendant class of Parking Lot owners, managers and agents that had permitted a

towing company, G&G Towing, to patrol tow their Parking Lots. *See* **Exhibit A**, Memorandum

and Order dated November 14, 2016. G&G Towing, like the Henry's Defendants here, asserted

possessory liens in respect of the trespass towed vehicles.

96.     The Classes, as defined above, are identifiable. The Named Plaintiff, Ms. Hall, is

a member of the Plaintiff Class. The Named Defendants, Wheaton and Foulger-Pratt, are

members of the Defendant Class.

97.     The Classes are so numerous that joinder of all members is impracticable.

98.     There are questions of law and fact which are not only common to the Classes but

which predominate over any questions affecting only individual class members.  The common

and predominating questions include, but are not limited to:

(a)     Whether Henry's failed to provide Plaintiff and Plaintiff Class members

the immediate and continuous opportunity to retake possession of their vehicles, and,

when it did so, acted with knowledge and intent that it lacked a legal right to do so;

(b)     Whether the actions of Henry's constitute violations of the Maryland Towing Act in its transactions with Plaintiff and Plaintiff Class members;

(c)     Whether the actions of Henry's constitute violations of the MC Tow Law in its transactions with Plaintiff and Plaintiff Class members;

(d)     Whether Henry's actions constitute violations of the Maryland Consumer Debt Collection Act;

(e)     Whether Henry's claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist in its dealings with Named Plaintiff and Plaintiff Class members;

(f)     Whether Wheaton, Foulger-Pratt, and the Defendant Class members are jointly and severally liable for violations of the Maryland Tow Act asserted herein;

(g)     Whether Wheaton, Foulger-Pratt, and the Defendant Class members are jointly and severally liable for violations of the MC Tow Law asserted herein;

(h)     Whether Henry's was acting as the agent for Wheaton, Foulger-Pratt and the Defendant Class members;

(i)     Whether Wheaton, Foulger-Pratt, and the Defendant Class members conspired with Henry's in violating the Maryland Towing Act and the MC Tow Law;

(j)     Whether Wheaton, Foulger-Pratt, and the Defendant Class members aided and abetted Henry's in violating the Maryland Towing Act and the MC Tow Law;

(k)     Whether a declaratory judgment to declare that Henry's cannot assert a possessory lien on trespass towed vehicles is proper and will alleviate all uncertainty in this proceeding;

(l)     Whether injunctive relief against Henry's is proper to prevent Henry's from asserting a possessory lien on trespass towed vehicles; and

(m)    Whether Named Plaintiff and the Plaintiff Class may recover damages for emotional distress and/or mental anguish from Defendants.

99.    The claims of the Named Plaintiff are typical of the claims of the respective members of the Plaintiff Class within the meaning of FED. R. CIV. P. 23(a)(3) and are based on and arise out of similar facts constituting the wrongful conduct of the Defendants.

100.    Named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class within the meaning of FED. R. CIV. P. 23(a)(4). Named Plaintiff is committed to vigorously litigating this matter. Further, Named Plaintiff has secured counsel experienced in handling class actions and complex litigation.

101.    Neither Named Plaintiff nor Plaintiff's counsel has any interests that might cause them not to vigorously pursue this claim.

102.    Wheaton and Foulger-Pratt will fairly and adequately protect the interests of the Defendant Class within the meaning of FED. R. CIV. P. 23(a)(4).

103.    The prosecution of separate actions by individual members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of FED. R. CIV. P. 23(b)(1)(A).

104.    Henry's actions are generally applicable to the respective Classes as a whole, and Named Plaintiff seeks equitable remedies with respect to the Plaintiff Class as a whole within the meaning of FED. R. CIV. P. 23(b)(2).

105.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of FED. R. CIV. P. 23(b)(3).

106.     The likelihood that individual members of the Classes will prosecute or defend separate actions is remote due to the time and expense necessary to conduct such litigation.

107.     Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## CAUSES OF ACTION

### Count I
### Violation of the Maryland Towing Act
(Md. Code Ann., Transp. § 21-10A-05(a)(3))
(Against All Defendants)

108.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

109.     Under Md. Code Ann., Transp. § 21-10A-05(a)(3), Henry's had a duty to "provide the owner of the vehicle or the owner's agent immediate and continuous opportunity, 24 hours per day, 7 days per week, from the time the vehicle was received at the storage facility, to retake possession of the vehicle."

110.     Henry's uniformly and consistently violated this duty in contravention of the Maryland Towing Act, Md. Code Ann., Transp. § 21-10A-05(a)(3) by asserting a possessory lien on trespass towed vehicles.

111.     As a result of Henry's failure to comply with Md. Code Ann., Transp. § 21-10A-05(a)(3) of the Maryland Towing Act, Named Plaintiff and the Plaintiff Class suffered actual loss and other damages.

112.     Named Defendants Wheaton and Foulger-Pratt and the Defendant Class are jointly and severally liable and responsible for the injuries and damages suffered by Plaintiff and the Plaintiff Class: (a) under the express provisions of the MC Tow Law; (b) as a result of the

actions of their agent Henry's; (c) for aiding and abetting Henry's violations of law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

**Count II**
**Violation of the MC Tow Law**
(Montgomery County Code, § 30C-9)
(Against All Defendants)

113.    Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

114.    Under the MC Tow Law, Henry's has a duty to return the vehicle to the vehicle's owner and provide the owner of the vehicle or the owner's agent immediate and continuous opportunity to retake possession of the vehicle. In fact, the MC Tow Law expressly provides that it does "not create or imply a lien in favor of a towing company when such a lien would not otherwise exist. This subsection and Section 30C-8 do not give a towing company a right to retain possession of any vehicle it would otherwise have to return to the vehicle owner."  MC Tow Law, § 30C-9(b)(5).

115.    Regardless, Henry's uniformly and consistently failed to comply with the requirements of the MC Tow Law by requiring Named Plaintiff and Plaintiff Class members to pay all towing, storage, and other charges as a condition to retaking possession of their vehicles.

116.    By claiming a lien on the Named Plaintiff's and Plaintiff Class members' vehicles, when no such lien existed, Henry's acted in contravention of the Montgomery County Code.

117.    As a result of Henry's failure to comply with MC Tow Law, Named Plaintiff and the Plaintiff Class suffered actual loss and other damages.

118.    Named Defendants Wheaton and Foulger-Pratt and the Defendant Class are jointly and severally liable and responsible for the injuries and damages suffered by Plaintiff and the Plaintiff Class: (a) under the express provisions of the MC Tow Law; (b) as a result of the

actions of their agent Henry's; (c) for aiding and abetting Henry's violations of law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

**Count III**
**Violation of the Maryland Consumer Protection Act**
(Md. Code Ann., Com. Law §§ 13-101, *et seq.*)
(Against All Defendants)

119.    Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

120.    Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia*, in the collection of consumer debts. CPA, § 13-303(3) and (4).

121.    The collection of towing charges from Named Plaintiff and members of the Plaintiff Class constitutes collection of consumer debts.

122.    As "person[s]" under the CPA, § 13-101(h), Henry's is prohibited from engaging in unfair and deceptive trade practices.

123.    The CPA specifically prohibits Henry's from making any false or misleading oral or written statement or other representation of any kind that has the capacity, tendency or effect of deceiving or misleading consumers. CPA, § 13-301(1).

124.    The CPA further prohibits Henry's from failing to state a material fact if the failure deceives or tends to deceive. CPA, § 13-301(3).

125.    In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), Henry's represented to Named Plaintiff and members of the Plaintiff Class that: (1) they were required to pay towing charges for "trespass tows," despite Henry's violations of Maryland and Montgomery County law described above; and (2) they were required to pay these charges before they could regain possession of their vehicles.  By making these representations, Henry's engaged in

25

misrepresentations and failures to state material facts, which deceived and tended to deceive and violated the aforesaid sections of the CPA.

126.    These representations were false and misleading and tend to and did deceive Named Plaintiff and members of the Plaintiff Class, who made payments to Henry's that were not due and owing.  In violation of the CPA, § 13-303(3) - (4) and §13-301(3), Henry's failed to disclose to Named Plaintiff and members of the Plaintiff Class certain material facts, including the fact that the charges imposed by Henry's were unlawful, and that Henry's had no right to retain their vehicles until payment was made to Henry's.

127.    These misrepresentations and failures to disclose material facts led Named Plaintiff and members of the Plaintiff Class to make payments that were not due and that they would not have made had Henry's informed them of the material facts. Henry's committed unfair and deceptive practices by collecting and attempting to collect on alleged consumer debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101, *et seq.*, including § 13-303(3) and (4), and § 13-301(1) and (3).

128.    As a result of Henry's unfair and deceptive trade practices in violation of the CPA, Named Plaintiff and members of the Plaintiff Class were told they owed money to Henry's they did not owe, and were induced and commanded by Henry's to make payments to Henry's on amounts that were not owed, causing Named Plaintiff and members of the Plaintiff Class injury and loss.

129.    Named Defendants Wheaton and Foulger-Pratt and the Defendant Class are jointly and severally liable and responsible for the injuries and damages suffered by Plaintiff and the Plaintiff Class: (a) under the express provisions of the MC Tow Law; (b) as a result of the actions of their agent Henry's; (c) for aiding and abetting Henry's violations of law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

<u>**Count IV**</u>
**Violation of the Maryland Consumer Debt Collection Act**
(Md. Code Ann., Com. Law §§ 14-201, *et. seq.*)
(Against All Defendants)

130. Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

131. The Henry's Defendants are "persons" as defined in Maryland's Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201(d).

132. The Henry's Defendants are "collectors" as defined in Md. Code Ann., Com. Law § 14-201(b).

133. The collection of towing charges from Named Plaintiff and members of the Plaintiff Class arise from "consumer transactions" as defined in Md. Code Ann., Com. Law § 14-201(c).

134. By collection of towing charges from Named Plaintiff and members of the Plaintiff Class in violation of Maryland law and Montgomery County ordinance, the Henry's Defendants are claiming and enforcing a right with knowledge that the right does not exist as prohibited by Md. Code Ann., Com. Law § 14-202(8).

135. Henry's knew or should have known that its actions violated the Maryland Towing Act and MC Tow law because: (1) the Henry's Defendants were aware that Named Plaintiff and Plaintiff Class members were consumers and that they were collecting monies related to a consumer transaction; and (2) the Maryland Court of Special Appeals' decisions in *T.R. Ltd. v. Lee*, 55 Md. App. 629, 634 (1983) and *Cade v. Montgomery County*, 83 Md. App. 419, 575 A.2d 744 (1990) hold that a towing company lacks the legal right to exert a possessory lien on trespass towed vehicles.

136. In addition, Henry's, at all times relevant to this complaint, also knew or should have known that the Editor's Note to the MC Tow Law makes clear, *inter alia*, that: "In *Cade v. Montgomery County*, 83 Md. App. 419, 575 A.2d 744 (1990), *cert. denied*, 320 Md. 350, 578 A.2d 190 (1990), *U.S. cert. denied*, 112 L.Ed.2d 1047 (1991), the court [held] … that the law's failure to create an express possessory lien denied the right of a towing company to require payment of its fee prior to releasing a towed vehicle…"

137. Despite the knowledge that Henry's cannot exert a possessory lien over trespass towed vehicles, Henry's attempted to enforce a right that does not exist by collecting monies from the Named Plaintiff and Plaintiff Class members as a precondition to them regaining possession of their vehicles.

138. Any monies paid by the Named Plaintiff and Plaintiff Class members that resulted from Henry's enforcement of a lien in violation of the Maryland Towing Act and MC Tow Law constitute actual damages and must be repaid to the Named Plaintiff and Plaintiff Class members by Henry's pursuant to the MCDCA.

139. Henry's collection scheme in violation of the MCDCA has caused Named Plaintiff and Plaintiff Class members emotional distress and mental anguish.

140. As a result Henry's failure to comply with the MCDCA, Named Plaintiff and the Plaintiff Class suffered financial loss, emotional distress, mental anguish, and other damages.

141. Named Defendants Wheaton and Foulger-Pratt and the Defendant Class are jointly and severally liable and responsible for the injuries and damages suffered by Plaintiff and the Plaintiff Class: (a) under the express provisions of the MC Tow Law; (b) as a result of the actions of their agent Henry's; (c) for aiding and abetting Henry's violations of law; and (d) as a result of the conspiracy to violate Maryland law as described herein.

## Count V
## Federal Declaratory Judgment Act
(28 U.S.C. §§ 2201, *et seq.*)
(Against the Henry's Defendants)

142.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

143.     An actual controversy exists between Named Plaintiff and the Plaintiff Class members, on the one hand, and the Henry's Defendants, on the other, which indicates immediate and inevitable litigation.

144.     Named Plaintiff and the Plaintiff Class assert that under the Maryland Towing Act and MC Tow Law, Henry's is not entitled to assert a possessory lien on trespass towed vehicles, namely by requiring Named Plaintiff and members of the Plaintiff Class to pay all towing, storage, and other charges as a precondition to retaking possession of their vehicles.

145.     The Henry's Defendants assert that requiring Named Plaintiff and members of the Plaintiff Class to pay all towing fees as a precondition for retaking possession of their vehicles is lawful.

146.     Named Plaintiff and the Plaintiff Class members have a right to be free from Henry's unlawful actions, and a declaratory judgment that establishes the illegality of the possessory lien over trespass towed vehicles will alleviate all uncertainty in this proceeding.

## Prayer for Relief

**WHEREFORE**, Named Plaintiff demands, on behalf of herself and the Plaintiff Class:

A.     An Order certifying this case as a Plaintiff Class action pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3);

B.     An Order certifying this case as a Defendant Class action pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3);

C.      A declaratory judgment declaring that Henry's cannot assert a possessory lien on trespass towed vehicles;

D.      Triple the amount paid by Plaintiff and each Plaintiff Class member to Henry's to retake possession of their vehicles, which in an aggregated amount exceeds $75,000$^{00}$;

E.      Damages for emotional distress and mental anguish under the MCDCA, Md. Code Ann., Com. Law §§ 14-201, *et. seq.*;

F.      Actual damages;

G.      An award of reasonable attorney's fees and litigation costs to be determined; and,

H.      Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:      May 9, 2022          Richard S. Gordon, Fed Bar No. 06882
rgordon@GWCfirm.com
Sara E. Assaid, Fed. Bar No. 21584
sassaid@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)

*Attorneys for Plaintiff and*
*the Putative Plaintiff Class*

By:      _____/s/ Richard S. Gordon_____
Richard S. Gordon

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


                                        _____/s/ Richard S. Gordon_____
                                        Richard S. Gordon